EDWARD JAMES KOCAL, Petitioner-Appellee, v. VICKI S. HOLT, f/k/a Vicki S. Bay, Respondent-Appellant.

Third District   Nos. 3—91—0195, 3—91—0316 cons.

Opinion filed June 5, 1992.—Rehearing denied July 22, 1992.

Dean A. Stone, of Macomb, for Vicki S. Holt.

James R. Standard, of Monmouth, for Edward James Kocal.

JUSTICE GORMAN delivered the opinion of the court:

This action was brought by petitioner-father for joint custody of his daughter, Krista Bay. The trial court imposed joint custody and ordered petitioner to pick up Krista in Macomb, Illinois. We affirm in part, reverse in part, and remand.

Petitioner Edward Kocal and respondent Vicki Holt (formerly Bay) began living together in Macomb, Illinois, in August 1982. Krista Bay was born to the couple on August 16, 1984. Respondent was the primary caregiver. Petitioner and respondent stopped living together in May 1985. Petitioner moved to Davenport, Iowa. He visited Krista monthly for the next several months. He then stopped paying child support. In 1987, an Iowa county court entered an order for support. That year, respondent married and continued to be the primary caregiver of Krista. During 1987-88, petitioner visited Krista on a regular basis and had her for several overnight visits. To facilitate the overnight visits, petitioner and respondent's husband met in Monmouth, Illinois, to transfer Krista.

In February 1989, respondent stopped allowing petitioner to visit Krista. Respondent alleged petitioner had returned Krista late and that the minor had been riding in petitioner's vehicle without a child's car seat, while seated in the lap of petitioner's female companion in a manner which caused the shoulder belt to cross the child's neck.

In August 1989, petitioner filed a petition for order regarding custody and visitation. Respondent counterpetitioned for an increase in child support. In February 1990, the court heard evidence on the petition. Respondent testified that she was opposed to joint custody. She stated that her relationship with petitioner was marked by animosity and a total lack of agreement concerning Krista. She also testified that she and petitioner do not communicate at all.

The trial judge interviewed Krista *in camera*. Krista told the judge that her mother had said that she does not like her father. Krista also said that she herself does not like her father. Further, the youngster indicated that she had fun when she visited her father. She also said that she understood that her father loved her and that he has told her so.

In April 1990, the court held that the proceeding was an initial custody determination and, therefore, petitioner's burden of proof was by a preponderance of the evidence. The trial judge ordered that petitioner and respondent have joint custody of their daughter, "in spite of the vitriolic interrelationship between the parties and the distance involved." Joint custody was to encompass all major decisions such as education, health care, and religious training. All other day-to-day decisions were to be left to respondent, who was also awarded primary residential custody. The judge set forth petitioner's visitation rights and directed the parties to undergo counseling. On rehearing, the court ordered petitioner to pick up Krista in Macomb, which order

reversed an earlier ruling requiring petitioner to pick his daughter up in Monmouth.

Respondent now appeals the joint custody decision. Petitioner appeals the decision regarding the transportation of the child for visitation.

The first issue respondent raises for review is whether the trial court applied the correct standard in making its custody determination.

Section 14(a)(2) of the Parentage Act of 1984 provides the following:

> "If a judgment of parentage contains no explicit award of custody, the establishment of a support obligation or of visitation rights in one parent shall be considered a judgment granting custody to the other parent." Ill. Rev. Stat. 1989, ch. 40, par. 2514(a)(2).

In pertinent part, section 610 of the Illinois Marriage and Dissolution of Marriage Act sets forth the following:

> "(a) *** [N]o motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health.
>
> (b) The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian ***." Ill. Rev. Stat. 1989, ch. 40, pars. 610(a), (b).

In the March 1987 Iowa county stipulation for support, petitioner acknowledged paternity. In the later order for support, the court set child support at $100 per month. Under the above-quoted provision of the Illinois Parentage Act, the Iowa order is considered a judgment granting custody of Krista to respondent. Since more than two years had elapsed from that order until the petition with regard to custody was filed in this case, section 610(b) of the Illinois Marriage and Dissolution of Marriage Act applies and the correct standard to be applied, as in any modification, is clear and convincing evidence.

The petitioner cites *In re Upmann* (1990), 200 Ill. App. 3d 827, 558 N.E.2d 568, as support for his position that custody should be determined by a preponderance of the evidence. There, an illegitimate

boy was born. Six months later, the mother filed a paternity petition. An order was entered finding paternity and imposing a support obligation on the father. Shortly thereafter, the father petitioned for custody. The trial court granted mother and father joint legal custody and gave the father physical custody. The appellate court affirmed and refused to follow section 610(a).

The *Upmann* court's decision is distinguishable in several ways. First and most important, that court was analyzing the interplay of section 14(a)(2) of the Parentage Act and section 610(a)—not section 610(b)—of the Illinois Marriage and Dissolution of Marriage Act. Second, the father there petitioned for custody within a matter of days of learning that the minor was indeed his child. Third, the minor there was only a few months old and the mother was not providing the child with a stable environment.

The second issue respondent raises is whether the trial court abused its discretion in awarding joint custody of Krista to the parties.

▮ Under *In re Marriage of Pool* (1983), 118 Ill. App. 3d 1035, 455 N.E.2d 887, joint custody orders are appropriate only where both parents have displayed an "unusual capacity to cooperate." In *Pool*, there was testimony regarding noncooperation and discord during the period of separation and trial. Therefore, the appellate court held that the trial court had abused its discretion in making a joint custodial award and reversed with instructions to place the children with one parent, subject to visitation by the other. Although *Pool* was decided under a prior statute which provided that joint custody was appropriate only where it was in the best interest of the child and both parties agreed to the arrangement, the *Pool* case is still applicable here. Presently the statute does not require the parties' agreement to the arrangement, but does provide that one factor in the joint custody determination is "the ability of the parents to cooperate effectively and consistently with each other towards the best interests of the child." Ill. Rev. Stat. 1989, ch. 40, par. 602.1(c)(1).

The parties here have not displayed a capacity to cooperate effectively regarding their daughter's upbringing. Rather, petitioner and respondent have such a history of disagreement that imposing a joint custody arrangement, even though limited, is against the best interests of the child. Therefore we reverse the imposition of joint custody and remand for a determination regarding visitation.

The final issue, which was raised for review by petitioner, was whether the trial court abused its discretion in directing him to pick up Krista in Macomb, Illinois.

██ Visitation orders will not be disturbed on appeal absent a grave abuse of discretion. (*In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 399 N.E.2d 1018.) Although the trial court did originally order that Monmouth, Illinois, would be the pick up/drop off point, it modified that order approximately six months later after hearing testimony of respondent's changed working shift. This change in schedule occurred through no fault of the respondent. The court then directed that the pick up point was to be Macomb. We can find no abuse of discretion here and affirm the trial court's determination on this issue.

Affirmed in part; reversed in part and remanded.

HAASE and STOUDER, JJ., concur.